1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   DIMAS ACEVEDO,                          Case No. 20-cv-1263-BAS-MSB

13                        Plaintiff,         **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

14        v.

15   THE LOAN COMPANY OF SAN                 **[ECF No. 3]**
     DIEGO, *et al.*,
16
                          Defendants.
17

18

19        On July 7, 2020, Plaintiff Dimas Acevedo filed an Ex Parte Motion for

20   Temporary Restraining Order, requesting the Court enjoin a scheduled foreclosure.

21   (ECF No. 3.)  Defendant The Loan Company of San Diego filed an opposition to the

22   Motion ("Opp'n," ECF No. 9) to which Plaintiff replied ("Reply," ECF No. 13).  The

23   Court held a telephonic oral argument on July 29, 2020.  The Court then ordered

24   supplemental briefing on one issue and temporarily postponed the foreclosure until

25   further order.  (ECF No. 18.)  Both parties filed briefs.  For the foregoing reasons,

26   the Court **DENIES** the Motion and lifts the temporary postponement of the

27   foreclosure.

28

1

## I.      FACTUAL ALLEGATIONS

Plaintiff is the owner of two parcels of land located at 1351–1355 Imperial Beach Boulevard and 1361–1363 Imperial Beach Boulevard in Imperial Beach, California.  ("Compl.," ECF No. 1, at ¶ 1, (hereinafter "parcel 1" and "parcel 2" respectively).)  Plaintiff states he has lived in one of the units on parcel 2 since April 2015.  ("Acevedo Supp. Decl.," ECF No. 22, ¶ 5.)  In July 2017, Defendant The Loan Company of San Diego loaned Plaintiff $1,200,000 for him to buy both parcels.  (Compl. ¶ 3.)[1]  Both parcels secure the loan.  (*Id.* ¶ 10.)  Plaintiff alleges the loan "was fashioned in such a way that it was secured by both [parcels] in order to circumvent the requirements of" federal regulations.  (*Id.* ¶ 12.)  The loan covers all five homes on the properties.  (*Id.* ¶ 36.)[2]  Defendant Action Foreclosure Services, Inc. is the foreclosing trustee (*id.* ¶ 4) and set a foreclosure date for both properties for July 31, 2020.  (Mot. at 2.)  Plaintiff seeks an order:

> To restrain and enjoin Defendants, its agents, assigns, employees, officers, attorneys, and representatives, and those in active concert or participation with them, pending trial of this action, from engaging in or performing any act to deprive or foreclose on Plaintiff of his residence in and possession of the real properties located at 1351-1355 Imperial Beach Boulevard, Imperial [Beach], California and 1361-1363 Imperial Beach Boulevard, Imperial Beach, California, including but not limited to instituting or maintaining eviction, or eviction enforcement proceedings on the property or from otherwise taking any steps whatsoever to deprive Plaintiff of their residence in and possession of the property or to impair or degrade the value of the Property.

(*Id.* at 7–8.)  Defendant the Loan Company opposes the Motion, and Defendant Action Foreclosure Services, Inc. did not file a response.  Although all of Plaintiff's

---

[1] The Complaint specifically states that the loan was "to buy" the parcels, but at oral argument Plaintiff's counsel informed the Court that the loan was actually a refinance.  Plaintiff received another loan from another company to buy the properties, but that lender was going to rescind the loan so Plaintiff refinanced six weeks with Defendant six weeks after purchase.

[2] Although the Complaint states there are five homes on both properties, at oral argument, Plaintiff's counsel stated that there are actually seven units on the properties.

– 2 –

causes of action are technically made against "all Defendants," Plaintiff does not once mention Action Foreclosure Services in the substance of his Complaint and makes it clear that the claims are centered around The Loan Company's actions. Thus, when the Court references "Defendant" throughout this Order, it is referencing The Loan Company.

## II.   LEGAL STANDARD

The standard for a temporary restraining order ("TRO") and preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). A TRO's "underlying purpose [is to] preserv[e] the status quo and prevent[ ] irreparable harm" until a preliminary injunction can be held. *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

## III.   ANALYSIS

### A.   Timing of the Ex Parte Motion

Plaintiff moves ex parte for a TRO, titling his motion an "emergency ex parte application." While the Court agrees that Plaintiff seeks an injunction before the scheduled foreclosure of July 31, 2020, it is less clear why Plaintiff did not request relief earlier and thus effectively made the situation an emergency.

Notices of default were recorded in August 2019 for both parcels. (Exhibits 4 and 5 to Lavinsky Decl., ECF No. 16.) Notices of Trustee's sale were recorded in January 2020 for both parcels. (Exhibits 6 and 7 to Lavinsky Decl.) The Trustee's sale was scheduled for February 19, 2020. (Lavinsky Decl. ¶ 16.) Plaintiff filed a bankruptcy petition, to which Defendant objected, and the Bankruptcy Court set a

1    hearing for July 8, 2020.  (Exhibit 12 to Coughlin Decl., ECF No. 9-2.)  Plaintiff filed

2    the present lawsuit on July 6, 2020.   On July 17, 2020, the Bankruptcy Court

3    dismissed the bankruptcy case.  (Exhibit 11 to Coughlin Decl.)

4           Thus, Plaintiff has been on notice of the foreclosure for almost a year.  Despite

5    notice of the impending foreclosure sale, however, Plaintiff waited to file this suit

6    challenging the sale until July 6, 2020, filed the TRO motion on July 7, 2020, and

7    did not file the proof of service of said motion on Defendants until July 15, 2020.

8           A proper ex parte motion must "address . . . why the regular noticed motion

9    procedures must be bypassed," i.e., "it must show why the moving party should be

10   allowed to go to the head of the line in front of all other litigants and receive special

11   treatment."  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492

12   (C.D. Cal. 1995).  This requires the moving party to "show that the moving party's

13   cause will be irreparably prejudiced if the underlying motion is heard according to

14   regular noticed motion procedures" and "that the moving party is without fault in

15   creating the crisis that requires ex parte relief, or that the crisis occurred as a result

16   of excusable neglect." *Id.*; *see also Hammett v. Sherman*, No. 19-CV-605 JLS (LL),

17   2019 WL 8013763, at *1 (S.D. Cal. Sept. 23, 2019).  Plaintiff does not explain the

18   lengthy delay in filing the Motion after he learned of the foreclosure.  Plaintiff's lack

19   of diligence has forced his "emergency" onto the Court, compelling it to come to a

20   decision in the few days before the scheduled foreclosure.  The Court could deny the

21   ex parte motion simply because Plaintiff has created the crisis; nevertheless, given

22   the scheduled foreclosure and the parties' need for a decision, the Court will evaluate

23   the present Motion.

24          **B.    Likelihood of Success on the Merits**

25          Plaintiff argues he is likely to succeed on the merits of his claim that the loan

26   violates various federal statutes and other state laws.[3]  The parties agree that the loan

27   _____

28   [3] Plaintiff lists the Equal Credit Opportunity Act ("ECOA") in his Motion as a statute that
     Defendants violated.  Although Plaintiff lists ECOA as his eighth cause of action in the caption of

– 4 –

is secured by all properties on both parcels.  (Lavinsky Decl. ¶ 4; Mot at 2.)  The issue is the legality of the way Defendant structured the loan.

### 1.    The Truth in Lending Act ("TILA") and Regulation Z

Plaintiff claims Defendant "never made any of the TILA-RESPA disclosure forms [sic] to Plaintiff." (Compl. ¶ 38.)  He states he was never given a loan estimate or a closing disclosure.  (*Id.* ¶¶ 40, 41.)

### a.    Plaintiff's Residence

The parties fiercely debate whether Plaintiff lives at one of the properties.  In his Motion, Plaintiff states he has lived on parcel 2 since April 6, 2015, prior to purchasing it, and he continued to live there after buying it.  (Mot. at 3.)  Plaintiff and his attorney submit various documents that list parcel 2 as Plaintiff's address, for example: w-2 wage statements from 2016 to 2019 from Plaintiff's employer (Exhibit D to Aldana Decl., ECF No. 3-2)[4] and driver's licenses for Plaintiff and his wife (Exhibits 1–4, 7 to Acevedo Decl., ECF No. 13-1).  In his supplemental briefing, Plaintiff (for the first time) submitted a declaration under penalty of perjury declaring that he lives on parcel 2.  (Acevedo Supp. Decl. ¶¶ 5, 20.)

---

his Complaint, he does not provide any information about it in the body of his Complaint (which changes the eighth cause of action to fraud).  The Court cannot evaluate the ECOA claim as it relates to the present Motion.  For a federal court to issue an injunction, there must be a "sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally. Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).

[4] Counsel does not establish how he has personal knowledge of the truth of the exhibits.  The statements are likely hearsay; it is logical to assume that the only reason counsel can state that the documents are accurate is because Plaintiff told him so.  (*See* ECF No. 9-3 (Defendant's objections to the declaration).)  However, courts "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  Accordingly, the Court does not strike the documents and will give them some weight if doing so will prevent irreparable harm.

In response, Defendant points to the loan documents where Plaintiff listed his residence as a condo in Chula Vista.  (Exhibits 2 and 3 to Lavinsky Decl. (deeds of trust listing Plaintiff's address as "[redacted] #13, Chula Vista, CA 91913-2408").)  Plaintiff's Chula Vista address is also listed on other loan-related documents.  (*See* Exhibit 13 and 14 to Lavinsky Decl. (disclosure statement of real estate loan and borrower contact information sheet).)  The disclosure statement also provides that the loan of $1,200,000 is to be secured by deeds of trust on property located at 1351– 1355 and 1361–1363 Imperial Beach Boulevard, "which is not expected to be used as Borrower's principal residence."  (Exhibit 13 to Lavinsky Decl. at 1.)  On that same document, Plaintiff initialed next to the statement: "I hereby warrant and represent the property securing the loan is held or will be held for investment purposes only; and is not now or intended to be my personal dwelling or on residential real property that includes or is intended to include my personal dwelling."  (*Id.* at 2.)  Plaintiff's tax returns also list the Chula Vista condo as his residence.  (Exhibit 16 to Lavinsky Decl.)  Plaintiff states he rented the Chula Vista condo so that his children could attend a nearby school.  (Acevedo Supp. Decl. ¶ 28.)

But the Court need not make a determination as to whether Plaintiff lives at the property; the below analysis does not require a decision either way.

### b.   TILA and Regulation Z Analysis

TILA, 15 U.S.C. §§ 1601 *et seq.*, and its implementing regulations, 12 C.F.R. §§ 226 *et seq.* ("Regulation Z"), require lenders to disclose certain information to borrowers as part of a loan transaction, including a "separate written itemization of the amount financed," the "finance charge," and the APR. *See* 12 C.F.R. §§ 226.18(c)–(d), 226.22.   "Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'"  *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir.

2009) (quoting 15 U.S.C. § 1601).  "To effectuate TILA's purpose, a court must construe 'the Act's provisions liberally in favor of the consumer' and require absolute compliance by creditors."  *Id.* (quoting *In re Ferrell*, 539 F.3d 1186, 1189 (9th Cir. 2008)).  If a lender fails to make the required disclosures, a borrower may (subject to certain statutes of limitations) bring a claim for damages or may "rescind any credit transaction in which a security interest is created in the obliger's home." *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986) (citing 15 U.S.C. § 1635).

TILA's rescission and damage remedies are available only in "consumer credit transactions." 15 U.S.C. § 1635(i)(4); 12 U.S.C. § 2606(a). For a loan to qualify as a consumer credit transaction under the statute, a borrower must demonstrate that the loan was extended to (1) a natural person and was obtained (2) "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i).  TILA specifically exempts from its scope extensions of credit for business or commercial purposes.  12 U.S.C. § 2606(a).  In determining whether a transaction is primarily for personal or business purposes, the Court must look to the transaction as a whole.  The Ninth Circuit has identified five factors to consider in determining whether the loan was for personal or business purposes: (1) the relationship of the borrower's primary occupation to the acquisition; (2) the degree to which the borrower will personally manage the acquisition; (3) the ratio of income from the acquisition to the total income of the borrower; (4) the size of the transaction; and (5) the borrower's statement of purpose for the loan. *Thorns v. Sundance Props.*, 726 F.2d 1417, 1419 (9th Cir. 1984).

As to the first factor, Plaintiff listed his occupation as an estimator for Pacific Pipe.  (Exhibit 24 to Coughlin Decl., at 1 (Plaintiff's balance of schedules, statements, and/or Chapter 13 plan filed in the bankruptcy court).)  Plaintiff provides the Court with no information about his work.  Without further information as to what an estimator for a pipe company does, the Court cannot determine whether this occupation is related to the property acquisition.  As to the second factor, Defendant

points to the leases for the properties and notes that there is no reference to any property management company in the leases.  (Exhibit 22 to Lavinsky Decl.)  Thus, Defendant contends that Plaintiff personally manages the properties.  Plaintiff debates the veracity of Exhibit 22, stating he "did not provide the leases" that Defendant attached, and they were not "made, written, or signed by Plaintiff." (Reply at 3.)  Plaintiff does not provide the Court with the "correct" leases, and Defendant contends the attachment contains the leases that Plaintiff himself gave Defendant when he applied for the loan.  The Court is not at this time evaluating the legitimacy of the leases; but, Plaintiff does not submit any leases or any evidence that he does use a property management company or that he does not personally manage the properties.  Therefore, it appears that Plaintiff personally manages the properties.  "The more personal involvement there is, the more likely it is to be business purpose." *Thorns*, 726 F.2d at 1419.  As to the third factor, Defendant points to Plaintiff's bankruptcy filing where he listed his income as $6,900 per month. (Exhibit 24 to Coughlin Decl., at 1.)  The income from the acquisition is the rent received on the properties, which Defendant calculates to be $14,945 per month. (Opp'n at 12; Lavinsky Decl. ¶ 30.)  Defendant bases this calculation on "information submitted by Plaintiff in connection with his loan request (including the leases)." (Lavinsky Decl. ¶ 30.)  Plaintiff responds that parcel 2 "generates $4,700" but he and his wife pay $2,000 of that and parcel 1 "generates $5,000."  (Reply at 2.)  Plaintiff provides no evidence or documentation to support this calculation.  The higher the ratio of the income from the property to Plaintiff's income, the more likely the loan was made for a business purpose.  *Thorns*, 726 F.2d at 1419.  By Defendant's calculations, the income from the rent is more than two times Plaintiff's income, and by Plaintiff's, the income from the rent is slightly more than Plaintiff's income.  As to the fourth factor, the size of the loan is $1,200,000, which is large.  "The larger the transaction, the more likely it is to be business purpose." *Thorns*, 726 F.2d at 1419.  As to the fifth factor, as noted above, Plaintiff repeatedly attested in loan

documents that the loan was made for business purposes. (*See* Exhibit 13 to Lavinsky Decl.)   Now he says he lives at parcel 2, but this is contradicted by the statement of purpose stated in loan documents, which Plaintiff signed and initialed.

After weighing these factors, the Court finds that Plaintiff is not likely to succeed in establishing that the loan was for personal purposes. *See Cox v. LB Lending, LLC*, No. EDCV171580JGBSPX, 2017 WL 6820171, at *8 (C.D. Cal. Nov. 16, 2017), *aff'd*, 713 F. App'x 623 (9th Cir. 2018) (denying preliminary injunction on TILA claim after finding the plaintiff "cannot overcome Defendants' documentary evidence and meet her burden of proof" that the loan falls under TILA). Plaintiff has submitted little evidence that would show that the loan was made for personal reasons, and "evidence of the personal nature of [the] loan, if any exists, should be uniquely available to [Plaintiff], especially at this early stage of litigation." *Bergman v. Fid. Nat. Fin., Inc.*, No. 2:12-CV-05994-ODW, 2012 WL 6013040, at *5 (C.D. Cal. Dec. 3, 2012).

In fact, a weighing of the factors suggests that the loan was for business purposes whether or not Plaintiff lives at the property—a factor the Court considers along with the five factors the Ninth Circuit has recognized.   There are seven units on the property and Plaintiff lives in one unit and receives rent from the six other properties and (according to Defendant) from renting out four garages. (*See* Lavinsky Decl. ¶ 30.)[5]  This shows the loan primarily is secured by property that Plaintiff rents out and the purpose of the loan was so that he could do so.   Indeed, it is not logical that one would take out a $1,200,000 loan for two parcels (covering seven units and multiple garages) solely or primarily for personal purposes. *See Schulken v. Wash. Mut. Bank, Henderson, NV*, No. C 09-02708 JW, 2010 WL 8971766, at *3 (N.D. Cal. Mar. 3, 2010) ("In evaluating whether a certain loan was made for commercial purposes, the emphasis should be on the purpose of the

---

[5] At oral argument, Plaintiff's counsel stated that Plaintiff had once rented out the garages, but he no longer does so.

transaction and not the categorization of the properties used to secure the loan.").
Further, commentary on Regulation Z provides that even for owner-occupied rental
property, "[c]redit extended to acquire the rental property is deemed to be for
business purposes if it contains more than 2 housing units."  *Supplement I to Part
226, Effective January 1, 2020*, 12 C.F.R. § Pt. 226, Supp. I, Subpt. A.  The loan
covers all seven housing units on the parcels, accordingly, the commentary still
deems the loan to be one made for business purposes even if one of the units is owner-
occupied.

    After considering the evidence in front of the Court at this time, the Court finds
that Plaintiff is not likely to succeed on the merits of his TILA claim.

### 2.    The Real Estate Settlement Procedures Act ("RESPA")

    Plaintiff states he was never provided RESPA disclosures.  (Compl. ¶¶ 47, 53.)
He states even if the loan "was a high-priced mortgage," Defendant violated
Regulation X "because Plaintiff was not given the required list of counseling
resource providers, and Plaintiffs [sic] did not take a counselling session."  (*Id*. ¶ 52.)

    RESPA does not apply to "credit transactions involving extensions of credit
primarily for business, commercial, or agricultural purposes."  12 U.S.C. § 2606(a)(1).
Regulation X is RESPA's implementing regulation.  12 C.F.R. §§ 1024 *et seq*.  It
similarly exempts business purpose loans from RESPA's coverage.  12 C.F.R.
§ 1024.5(b)(2).  For the reasons stated above, Plaintiff is not likely to succeed in
establishing that the loan was for personal purposes, and thus has not met his burden
in showing that RESPA applies.

### 3.    The Home Ownership and Equity Protection Act ("HOEPA")

    Plaintiff states he was not provided with certain disclosures or information in
violation of HOEPA.  (Compl. ¶¶ 67–70.)  Following oral argument, the Court
requested the parties provide supplemental briefing on HOEPA.

Plaintiff claims he has a "high-cost" mortgage that is covered by HOEPA. HOEPA "is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitations as TILA." *Beriones v. IMH Assets Corp.*, No. 19CV301-CAB-NLS, 2019 WL 1714467, at *3 (S.D. Cal. Apr. 16, 2019) (citation omitted). A mortgage is "high-cost" and triggers HOEPA protections if it is a consumer credit transaction that is secured by the consumer's principal dwelling and satisfies one of the following conditions: (1) the mortgage has an annual percentage rate that exceeds the average prime rate by more than 6.5 points on a first mortgage, or more than 8.5 points on a subordinate mortgage; (2) the total points and fees exceed five percent of the transaction for $20,000 or more or the lesser of eight percent; or $1,000 on a transaction less than $20,000; or (3) the transaction documents allow for prepayment fees more than three years after the closing, or such fees amount to more than two percent of the prepaid sum. 15 U.S.C. § 1602(b)(b). Plaintiff argues Defendant did not provide him with certain HOEPA disclosures and that Defendant violated section 1639(r), which provides that a creditor may not take any action "in connection with a high cost mortgage . . . to structure a loan transaction as an open-end credit plan or another form of loan for the purpose and with the intent of evading the provisions of this subchapter." 15 U.S.C. § 1639(r).

Defendant points to 15 U.S.C. § 1603, which states, "[t]his subchapter does not apply to . . . credit transactions involving extensions of credit primarily for business [or] commercial purposes . . . ." 15 U.S.C. § 1603(1). Defendant contends, "if the transaction is exempt under 15 U.S.C.A. § 1603(1), then a lender is expressly not subject to any of the requirements or operation of any other provision of Subchapter 1 [namely section 1602 or 1639(r)]." (ECF No. 20, at 3.) This is because the subchapter referred to in 1603 covers 15 U.S.C. § 1601 to § 1667f, and therefore the Court should not look beyond 1603, which provides "this subchapter" shall not apply to loans primarily for business purposes. Thus, it does not matter whether Plaintiff lives on one of the parcels, or even if the unit there is his "principal

dwelling" under section 1602, because the primary purpose of the loan was business. (*Id.* at 5.)  Plaintiff does not mention section 1603 in his supplemental brief, only arguing that the parcel does constitute his principal dwelling and he is still within the statute of limitations to rescind the loan.  (ECF No. 23.)  The Court agrees with Defendant, and a reading of section 1603 informs the Court that it need not look any further into the HOEPA subchapter if the loan is primarily for business purposes, like the loan here.

Further, in analyzing TILA, the Ninth Circuit noted that the rescission and damage remedies are available only in "consumer credit transactions" which TILA defines "carefully."  *Gilliam, Tr. of Lou Easter Ross Revocable Tr. v. Levine, Tr. of Joel Sherman Revocable Tr.*, 955 F.3d 1117, 1120 (9th Cir. 2020).  Namely, "[f]or a loan to qualify as a consumer credit transaction under the statute, a borrower must demonstrate that the loan was extended to (1) a natural person, and was obtained (2) 'primarily for personal, family, or household purposes.' Extensions of credit to organizations are excluded, as are credit transactions performed for non-consumer purposes, such as loans for a business purpose, even when that loan is obtained by a natural person." *Id.* (citations omitted) (citing 15 U.S.C. § 1602(i) and § 1603).  The definition of "high cost mortgage" under HOEPA is a "consumer credit transaction that is secured by the consumer's principal dwelling" if certain conditions are met. 15 U.S.C. § 1602(b)(b)(1)(A).  For the Court to even turn to the questions of whether the loan is secured by Plaintiff's "primary dwelling" and whether the conditions are met, the loan must in the first place be a consumer credit transaction.  The Court has found above that the loan was extended primarily for business purposes, accordingly, it is not a consumer credit transaction.

Plaintiff's next argument is that Defendant improperly structured the loan in a way to avoid HOEPA, which is not allowed under 15 U.S.C. § 1639(r).  But section 1639 also falls within the "subchapter" referred to in 1603 (i.e. "[t]his subchapter does not apply to . . . credit transactions involving extensions of credit primarily for

business [or] commercial purposes"), so, section 1639 does not apply if the loan was extended primarily for business purposes.  And further, section 1639 itself provides: "A creditor may not take any connection with a high-cost mortgage . . . to structure a loan transaction as an open-end credit plan or another form of loan for the purpose and with the intent of evading the provisions of this subchapter."  15 U.S.C. § 1639(r) (emphasis added).  Thus, section 1639 does not apply unless the loan in question is a "high-cost mortgage" which itself is defined as a "consumer credit transaction."  The loan here is not a consumer credit transaction because it was not extended primarily for personal reasons.  Section 1639 does not apply.

For these reasons, Plaintiff has not met his burden in demonstrating that HOEPA applies to his loan.

### 4.   Negligence

Plaintiff's Complaint broadly alleges Defendants had "a duty to exercise reasonable care and skill in performing their duties for the benefit of Plaintiff, in representing Plaintiff in originating" the loan, but Defendants breached this duty and their fiduciary duty.  (Compl. ¶¶ 79, 80.)  There is no further information by Plaintiff as to what action specifically led to a breach of duty, and the Court found above that Plaintiff is not likely to succeed on his claim regarding violation of the federal statutes, so this cannot form the basis of the breach.  Plaintiff has not established he is likely to succeed on the merits of his negligence claim.

### 5.   Unfair Competition Law

California Business and Professions Code § 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."  Specifically, Plaintiff alleges "Defendants [sic] conduct was unfair in that Defendant violated Civil Code § 1572 (Fraud)."  (Compl. ¶ 101.)  Because the Court finds below that Plaintiff has not adequately alleged fraud, the same result goes for the UCL claim based on fraud.

1

### 6.     Fraud

2
Plaintiff alleges fraud occurred because Defendant "knew that Plaintiff had

3
[sic] could not pay the LOAN they were [sic] receiving.  Defendant was told by Alan

4
Paranada that in six months, he would be able to refinance into a conventional loan

5
with an interest of 4.5%." (Compl. ¶ 117.)  The Court assumes Plaintiff meant to say

6
that he (not Defendant) "was told by Alan Paranada" about the refinance.  However,

7
the Complaint does not say who Alan Paranada is, nor does it state Parnada's

8
connection to either Defendant or his role in the transaction.  In his supplemental

9
declaration, Plaintiff attests that Paranada is a loan officer for Defendant.  (Acevedo

10
Supp. Decl. ¶ 15.)

11
Federal Rule of Civil Procedure 9(b) demands that allegations of fraud "be

12
'specific enough to give defendants notice of the particular misconduct . . . so that

13
they can defend against the charge and not just deny that they have done anything

14
wrong.'"  *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation

15
omitted).  "Averments of fraud must be accompanied by 'the who, what, when,

16
where, and how' of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317

17
F.3d 1097, 1106 (9th Cir. 2003).  Without any more detail about Paranada, the

18
statement he allegedly made, and why it was false, Plaintiff has not met Rule 9(b)

19
and therefore does not establish that he is likely to succeed on the merits of his claim.

20
"Likelihood of success on the merits 'is the most important' *Winter* factor; if

21
a movant fails to meet this 'threshold inquiry,' the court need not consider the other

22
factors, in the absence of 'serious questions going to the merits.'"  *Disney Enters, Inc.*

23
*v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff has not established

24
any serious questions on the merits of his claims, so the Court does not consider the

25
other factors.

26

27

28
/ / /

IV.     **CONCLUSION**

Plaintiff has not established he is likely to succeed on the merits of any of his claims, therefore, he has not established that a temporary restraining order is warranted.  For the foregoing reasons, the Court **DENIES** Plaintiff's Motion.  The Court also **LIFTS** the temporary postponement of the foreclosure it previously issued.  (*See* ECF No. 18.)

**IT IS SO ORDERED.**

**DATED: August 10, 2020**

Hon. Cynthia Bashant
United States District Judge